From the Estate of Dr. 2-18-0561, Benny L. Williams III, Administrator of the Estate of Karen S. Williams, defeats Plankton Fenton in the manual or in the provisional capacity of Sheriff of Coon County, Defendant Abilene. Arguing on behalf of Plankton Fenton, Mr. Craig M. Sandberg. Arguing on behalf of Defendant Abilene, Mr. Joel Quattaro. Mr. Sandberg. Good morning. Good morning, Your Honor. We have a new sheriff in town, right? We do. We do, not just you. The sheriff, there's a new sheriff, so we have to change the name on it. Oh, right, right. I'm sorry, Your Honor. Sorry to alarm you. Yes. May it please the Court. This case involves the August 20, 2014 high-speed chase happening over 150 miles an hour, initiated in Belvidere by Coon County Deputy Robert Rosencrantz, which continued into Winnebago County and ended when the vehicle of Deputy Rosencrantz was pursuing, mirroring another vehicle that struck Karen Williams, causing substantial injuries to her and eventually resulting in her death. There are a number of issues that were raised on the appeal, and I think for purposes of here today, I'd like to talk about a couple of them that are the most concerning and I think play the greatest role in creating substantial prejudice resulting in the denial of a fair trial to the plaintiff. The first of this is the use of the convictions in this particular case, and I know that the briefs talk about the statements of the individuals were included, and I think that they were included because since they were parties, it was a statement against interest, and so it could be read. They had been defaulted prior to trial, and so there wasn't anything that they could do to dispute that evidence. Causation of damage, really, was the only issue that would remain as to them. However, the use of the convictions in this particular case was unusual in the sense that, obviously, with a conviction like this, the plaintiff wouldn't have had any opportunity to play a role in that, and so effectively the defense counsel was utilizing these convictions for offensive collateral estoppel on issues that the plaintiff couldn't have been involved in, and in this particular case. So do you want to, that goes to, this wasn't, this issue of the convictions wasn't preserved. So you're talking about then, you want us to look at plain error? And then if you do, then I would ask you to expand a little bit more on where the prejudice is. You were talking about collateral estoppel here, so do you want to flesh that out a little bit? Sure, a couple things. I'm not sure I agree with Your Honor that the issue wasn't preserved. I think in my brief I talked about that there was a motion, let me, that was in the nature of a motion to bar, and so there wasn't an obligation to re-raise that issue. Well, if we want to stop there for just a minute, though, the cases that are cited, McMath and Spryka, were cases where the objection at issue was raised during the course of the trial. That's why there was a bar. This was not. This was a motion in limine decided weeks before the trial. So there was no objection then made at the trial. Right, and I understand your point, and that's why I characterize it as I understand the way the evidence was put in as a motion to bar. But to the extent that it was an issue that wasn't preserved, then I think the issue of plain error is appropriate to be considered, because at the time of the trial, these three individuals had been defaulted. They can't, there isn't going to be any testimony from them, so the convictions aren't going to be used for impeachment purposes. The convictions themselves and exactly what were they convicted of, there's no elocution, there's no indictment that's made part of the record. Well, aren't they relevant to the third-party claim that the sheriff had against them? I'm not sure that the convictions are relevant to that claim. Certainly to what the sheriff had to show, the intentional conduct, correct? Well, I'm not sure I agree with that. Didn't the convictions go to the argument about the policy to the nature of the crimes that the officer, Rosencrantz, was investigating or pursuing, that these men were involved in a very serious offense involving a handgun? Don't those convictions go to that? Well, I think the statements go, the statements that were read into evidence go to that. But the convictions do not, because at the time that Officer Rosencrantz was, or Deputy Rosencrantz was driving, he wasn't aware of this. He was aware that there was a vehicle, this is the color of the vehicle, these are the types of individuals, and he had an indicia, a suspicion, that this may have been the vehicle. And so the conviction as to what they did pre-pursuit, pre-engagement, is immaterial to the allegations that both the plaintiff raised against the defendant, including when the three individuals were defendants, as well as the contribution claim that it became. The conviction related to what happened after the event. There's some suggestion in the briefs of the defendant that it wasn't sufficiently fleshed out what post-incident events were being referred to, except the incident is the car accident that caused her injuries and eventual death. There isn't anything about what they did after climbing out, maybe discharging a weapon or anything like that. And so that would have nothing to do except to toss a skunk into that jury box that can't be gotten rid of. That's like telling the jury to focus only on the evidence when they have a conviction that I don't think should have been allowed by the court. And how is that prejudicial, to have allowed it in? How is it prejudicial to have a determination? The convictions, the evidence about what they agreed to came through the statements. I'm sorry, what they agreed to, meaning what? I'm sorry, the statements that were read. Their admissions. Correct, that were read by the detective during the course of the trial. That was the evidence of what they were testifying to. All the convictions were by plea, correct? All of the convictions were by plea. And a plea is an admission, correct? A plea is an admission, true, but if we're getting to that, then what matters is what did they admit to? Not simply the charge, not simply the statute, but the facts. Because in a second-degree murder, as indicated in the brief, that can't include negligent conduct. And so without. Second-degree murder can't include negligence. Where did you get that? Yeah. Involuntary manslaughter would include possible recklessness, but not negligence.  I'm sure you're not mistaken, Your Honor. Let me ask you this. Yes. You argue that the jury could have arrived at a different verdict based upon the evidence, correct? Yes. But you don't argue that the verdict is against the manifest weight of the evidence. Well, the argument is that because there's substantial prejudice that we believe has been shown, that is the denial of a fair trial. That resulted in the denial of a fair trial. That's not saying that the jury couldn't have reached this. That the jury knew about the convictions. The fact that the jury was aware of the conviction in this particular case was so gravely affected the perceptions that the jury likely had so that it created the substantial prejudice that denied a fair trial. Back to your point, Justice Procato, this is not a manifest weight case. This is not a situation where the plaintiff is coming in and saying, based on the evidence here, it would be impossible for the jury to reach this conclusion. What we're saying is that in this particular case, because it's a close call, and it's a closely balanced evidentiary, right, because the evidence in this case is, even from Deputy Rosengrantz, is that he was traveling. He was mirroring. He was going through red lights. He was going through intersections. The pursuit itself, you know, this is, I guess, a dispute that you have with the sheriff, but the pursuit itself was really only 80 seconds long, correct? The actual pursuit. Do you agree with that representation? I think that the pursuit is at least 80 seconds long, correct. If we're going to be matching the language specifically, I think of what the testimony about what the policy is and what constitutes a pursuit. But Deputy Rosengrantz, in going through the intersections, civilian drivers are unpredictable, and we know that to be true, and obviously that's one of the issues with regard to Karen Williams here. But pursuing a fleeing vehicle through a congested intersection is like playing Russian roulette, because the officer cannot predict how other drivers will react. And so that's important because, in this particular case, at the time that the impact takes place, the vehicle that's driven by Deputy Rosengrantz is following so closely behind, it's essentially like reverse magnets, just pushing it along, pushing that vehicle into the intersection. Not physically, but essentially. And so when we have conditions like this, where a jury could easily conclude that Deputy Rosengrantz was acting recklessly or with a conscious disregard for the safety of others because he's traveling at these high rates of speed for the 80 seconds that Your Honor was talking about, in an area, I think this is a Wednesday in the middle of the week, so it's after people's work, people are coming out of the mall, all of these are factors that would have been available for consideration by a jury, and I'm sure were considered. However, once we get to the convictions and telling the jury, essentially, that these people have, or at least certainly the driver, has already admitted to being at fault, when the position that the sheriff has been taking all along is that there isn't anything that he did to cause or contribute to that. Not just that he had a duty and he breached that duty. The deputy has been saying that he didn't do anything that caused or contributed. We know from the briefs that that's not necessarily a position that they're taking. But the factor and the fact that these convictions went in so tainted the evidence in this case by making it nearly impossible for the jury to take that out of their mind would have made it difficult for them to, in considering Verdict Form A, to look at that with clarity, having been told already that the defendant or defendant's been at fault. That issue, you want to move on to the issue of the policy, because we've discussed that issue at length, and you're using a lot of your time. Yeah, I'm sorry. I was trying to answer your question. But the policy, how was the trial affected by the policy, which came into evidence? Just building on that, I mean, if you can really touch on, too, how since there wasn't a claim for negligent retention or training, why was Rose Krantz's history of the policy pursuits or these pursuits relevant? Okay, I have two different questions I'm going to try to answer. I thought they were related, but go ahead. Maybe they're in my head. I'm having trouble. Okay, go ahead. Answer Jessica's question first. So the issue in this particular case as it relates to the policy is that a policy and its violation can be evidence of willful wanton conduct. And the judge in this particular case, as I cited in the brief, stated that it cannot be used as evidence for that. Well, there was an agreement to an instruction, correct? There was an agreement as to the instruction.  True. Was that instruction accurate? The instruction was somewhat accurate. But it was agreed to. I understand. I understand. And the instruction was failure to follow the Boone County pursuit policy in and of itself. That's the language that trial counsel inserted or asked be inserted, and that was accepted, is not evidence of willful and wanton conduct. That was non-IPI 16 that was given. Right. And so the question I suspect is that as to the 6001 instruction, whether or not the giving or not giving of that instruction... Which was not submitted. Which was not true. That wasn't submitted. And I believe and I suspect that it wasn't submitted because the court had said that earlier that the use of that policy cannot act as evidence of willful and wanton conduct. I don't think the record... But plaintiff's counsel told the trial court that he had no objection to bearing evidence of Rose Grant's history of police pursuits. They... As to that issue, Your Honor... I mean, how can he argue on appeal what you're arguing now, that the court erred in excluding that evidence? Your question is how can the plaintiff argue now that the exclusion of Deputy Rose Grant's, I suppose that if it wasn't properly preserved or otherwise waived, then... No, no. He said he had no objection to that evidence staying out. So that's different than not being preserved. And it's been forfeited, I suppose. There's two issues here. One is his prior pursuits and then the other is the evidence of the policy in this case and whether that policy was violated. Correct. In this case. Correct. Now, Justice Zenoff is talking about the prior pursuits. And do you agree that there was a forfeiture of that? I think the record suggests that it was forfeited. Now, with the second issue that Justice Burkett was asking about, I mean, when the instruction was being argued, counsel for the defendant said you allowed policy and you agreed that there shouldn't be any evidence that a failure to follow is evidence of willful conduct. And Mr. Salter argued or said we've not argued that, we will not argue that. So basically in this, and I think it happened a couple more times, where he basically agreed that he wouldn't argue that that was evidence. But even in light of that, he did argue it was evidence, and there was an instruction given that it's not in and of itself, a violation of policy is not in and of itself willful or not. Right. Correct? Right. Where's the error there if you've got counsel saying we've not argued that, we will not argue that, then in fact they kind of do argue that, but they get this limiting language in the instruction that you can argue it, but it's just not in and of itself proof of willful or not. The only thing I can say to that, Your Honor, is I think given the Court's earlier commentary that it was going to bar all, it was going to bar the use of the policy as evidence of willful or nonconduct, kind of drives perhaps some of the nature of what the arguments were or some of what Mr. Salter was preserving or attempting to preserve in reliance on that prior order. And so for purposes of both the post-trial as well as the pre-appeal, that issue is raised because the idea is that a 6-0-1 or something like that would have otherwise been permitted. Thank you. We still have time for rebuttal. Mr. Kutari. Is it Kutari? Good morning, Your Honor. Yes, Phil Kutari on behalf of the defendant of the Boone County Sheriff's Office. Good morning. I think that what we are addressing today are primarily self-inflicted wounds. As much of your comments have indicated, a lot of what's being complained about was either agreed to before the trial court or not objected to at the time it was introduced at trial. So we do have issues of waiver and forfeiture, which I think are going to be dispositive of all the issues before you today. There are really six issues that were raised in the briefs, only a couple of which have been touched upon today, so I'm not going to focus on all six. It sounds like they've pretty much backed down on a lot of these things, which really shouldn't have been appealed in the first place, such as the expert witness on payment suffering. That, I don't believe, is properly before the court. Do the issues raise in the briefs? Well, why don't we start with the criminal convictions, since counsel spent a lot of time on that. Why wasn't plaintiff prejudiced by the evidence of these convictions that came in? Well, remember, plaintiffs sued these guys as well. Originally, the plaintiffs sued the sheriff as well as Brooks or DeLocke. But then dismissed. On the eve of trial, they were non-suited, leaving the sheriff to pursue its claims against them so that the jury would be able to apportion the fault among all of the alleged wrongdoers. The sheriff, to the extent they found liability, goes to the sheriff's office, as well as the fleeing felons. That's why it was relevant, because in order for the jury to do its job and assign degrees of fault… They should have all the tort pieces in front of them. They should have all the tort pieces in front of them. They should all be on the verdict board, because without them, we've only got the sheriff. And it's either yes or no. It's not degrees of fault. It's not addressing their relative culpability. It's not factoring in that this is a premeditated armed robbery. It's not factoring in that they had the gun and the stolen merchandise in the vehicle while they were being pursued. Which is why, when they started to get pulled over, one of the passengers said, Go, go, go! Because they knew that they were busted. This wasn't just some kid off the road right there speeding. They were caught in the commission of an armed robber with the gun and the goods in their possession. But counsel's point is the jury really would be diverted from the real issues. Why wouldn't the introduction of these convictions, as opposed to, let's say, just the admissions or the statements of the defendants, why wouldn't the jury be diverted from the real issues here by introduction of aggravated discharge of a firearm and the other convictions that were admitted? I don't think that the fact that they pled guilty to those criminal offenses materially changed the story or the narrative that the jury heard. Was the discharge of the weapon even relevant? Probably not, but you know what?  The plaintiff introduced evidence through my client, Deputy Rosenkranz, that after the collision, he didn't come to Karen Williams' aid because one of the bad guys jumped out of the window of the car with a gun in hand prior to the shot, such that his attention had to be diverted to the guy with the gun and not the poor woman who was dying in a sphincter in all this. All of that evidence was introduced not by the sheriff, but by plaintiff's counsel. And now he's appealing this issue as if the sheriff introduced improper evidence. That's why the fact that they were convicted does not materially change the whole story that they were presented at trial, much of which was introduced through the plaintiff's counsel. Now, again, they could have called these three convicted felons. They could have brought them in as witnesses. They chose not to do so. If they wanted to spin their convictions or clean it up so that the jury wasn't distracted by the fact of their convictions, they could have done so. They didn't. So it's not the sheriff's fault that this evidence came in and was considered by the jury. I think, as the judge said when he ruled on putting the whole video in, it's all part of the story, and the jury needed the whole story in order to weigh the facts and apportion fault. Now, if this issue wasn't preserved by the appellant, does plain error apply here? What about Belleville? I don't think it does, Judge. One reason is if we had called these three convicted felons to testify live instead of presenting evidence about their wrongdoing through the papers or through the detectives who read their statements, we would certainly have been able to introduce their convictions and teach their credibility in order to give the jury the full picture of who's testifying and the veracity and the credibility of their testimony. Any convicted felon is subject to having their felony conviction exposed during trial as a part of setting up who they are and why you should believe them. So, again, the fact of their convictions, it's kind of a red herring, might be perceived as a useful appellate issue to raise, but it did not sway the jury. It is not plain error to have admitted it. The fact that their statements were admitted without objection makes the fact of their convictions kind of a so what because their statements admits all their wrongdoing. So it's kind of the same evidence, and if it was proper to look at statements, it's proper to look at convictions. So that is primarily everything I wanted to talk about with respect to the convictions. I do agree with you that McMath and Spryker are totally different cases. I don't think they have any application here because, as we said, during the trial, no objections were made. It's black-letter law. On a preserved issue, you've got to raise an objection at trial. So those cases don't carry the day. You want to address, with respect to the pursuit policy issue, the Hudson case that counsel says is authority that indicates a violation of an internal police department rule can constitute some evidence of willful and wanton conduct, and therefore that case at least stands as authority for the fact that the judge should have allowed that. And the judge did allow that. The jury instruction specifically allowed for the introduction of argument that says, in conjunction with other evidence in the circumstances of this case, the fact that the policy was violated is some evidence of willful and wanton conduct. Would you agree, though, that some of the trial court's comments went the other way and basically said, I'm not letting this evidence in on the issue of willful and wanton? I'll let it in on the issue of intent and state of mind, but not willful and wanton at all? I don't believe that the judge's comments were made over the objection of plaintiff's counsel. Because if you read the exchange on that issue, which is quoted in the briefs, Keenan Salter, plaintiff's counsel at trial, says, quote, I do agree that we cannot get up before the jury and say he, Rosencrantz, violated four of the 14 tenets of the policy, thereby he's willful and wanton. I agree with that. The case is clear. The warrant is clear. We agree, we would agree not to violate the ruling of Morton and say, hey, he violated the policy, thereby he was reckless. But we should be able to say, certainly, certainly question him about his understanding of how he was to conduct a police chase, to which I responded to the court. So my motion of 118 says, if the policy is admissible, no violation of that policy should be claimed to evidence of willful and wanton conduct. The court asks opposing counsel. I think you actually agree with that. Mr. Salter, quote, I do agree with that. The court says, yeah, in that case, if we get a lot of policy in, we're going to give an instruction that says it's not a line for line, a violation equals willful and wanton conduct. Opposing counsel agreed with that. That motion of 118 was granted with his agreement, his blessing. And your position is that the jury was accurately instructed? Absolutely, and that jury instruction was co-drafted by plaintiff's counsel. He's the one that proposed the language in and of itself. That language was proposed by plaintiff's counsel. Well, there was, I mean, to be fair, there was an objection. And then he said, if you're going to consider this judge, I want this language in. I mean, that probably is still preserving the objection, is it not? If I object to something and the judge is leaning toward letting it in, I say, okay, I'm objecting, but if you're letting it in, I want this limiting language. I think that generally that's true, but if you look at the language from the transcript of the hearings that day, the modified jury instruction was not objected to. He said, well, I'm okay with that. So I don't think there was an objection to the modified jury instruction. The original jury instruction that didn't include the in and of itself language, he objected to that. But once he changed it, he approved that, endorsed it, and that's what was given. And there's no evidence that he at some point made an offer of proof or tried to introduce evidence of a policy violation that the court rejected. He said, no, you can't argue that that policy violation is evidence of local conduct. That was never done. There was nothing offered that was kept out. So what do you have? You have motion eliminated that he agreed with, he consented to. Then you have a jury instruction that he initially objected to, proposed a change to, and then approved, which the court adopted. And that language is perfectly in line with the cases that are addressing that issue. I was just going to say, just on that point, there is a first district case, Hoffman, which doesn't seem to be in line and reads Morton differently. It's cited in the briefs, 2017 ILL Act I, 170537. There the court seemed to say that violation of an internal safety rule is some evidence of misconduct, and reads Morton to impliedly stand for that and that a jury can consider it, along with other evidence that would demonstrate willful and wanton conduct. And that's why the jury instruction says in and of itself, all of the case law, including that case, is consistent in saying a policy violation alone is not evidence of willful and wanton conduct. There has to be something else. Something else, some circumstance, some actual proof of wrongful conduct, notwithstanding the policy violation, some failure to act with due regard for public safety. Something else has to add up with the policy violation in order to be considered evidence of willful and wanton conduct. Because the policy is not the law. The law is you have to act with due regard for public safety. You have to follow statutes and everything else. The policy is just a policy. You can violate the policy without violating the law. So you can't rely on a narrow violation of the policy alone to say jurors, violating the policy, that is willful and wanton conduct. If there had been an instruction pursuant to IPI 60.01, would it have changed the result here? Absolutely not. Essentially almost the same instruction, just a longer instruction. It's a very similar instruction. A 60.01 was never tendered, which means it shouldn't be raised on appeal. But moreover, a 60.01 talks about a violation of a statute or an administrative ordinance. Although you can modify an instruction according to the facts of the case. And I think you would have to severely modify 60.01 because we're talking about a policy which is not a law. So I think that the jury instruction that we proposed that was not opposed by opposing counsel and that the court adopted was an appropriate instruction. I think that it jives with all of the cases that were cited in the briefs addressing this issue. So I don't believe that there is anything wrong. Let me back up. The jury instruction itself is not an issue on appeal. They did not appeal the issuance of the jury instruction. So we can put that to the side. The only thing on appeal with respect to this issue is the motion in limine number 18, which they consented to. It's really a non-issue. I don't know why we're here to talk about that because they agreed to it on the record. The transcript cited extensively in the brief. A couple of days, I believe, after that last exchange that I quoted, and this is the record at 252.12 to 253.21, as he pointed out earlier, he said he represents to the court that he will not argue that a violation by Rosencrantz or Krieger was per se or is per se evidence of an utter difference of consciousness with regard to the safety of others. He says, so I think the issue is not, it won't be an issue, but we should be able to argue that if the evidence shows there were deviations from the policy, we should be able to argue about that. I think the case law suggests that we can't say it's a line-to-line violation of policy equals willful wanton conduct. We won't argue the case in that fashion. Then the judge says, well, so I actually think I'm going to grant 18 then because I think we're on the same page. I'm going to allow it in the case of the policy. And then the judge goes on to say any violation of the policy goes to Deputy Rosencrantz's thoughts and actions. That's what's really relevant to this case. Was Rosencrantz disciplined at all for this case? I know it's not in the briefs. I'm sure there was an investigation. I don't think any discipline or action was a part of the record, one way or the other. So, respectfully, I don't think that this issue has been preserved. I think the consent to this motion to eliminate 18, that ruling, is clearly within the court's broad discretion. This case is here on an abuse of discretion standard, which is the lowest level of review. It's next to no review at all.  I'm admitting and excluding certain evidence to be affirmed in all respects. Thank you. Thank you. Mr. Sandberg, you're welcome. Just a few points. One of the things the counsel talked about was the admission of the video by the court to tell the whole story. We all know as trial attorneys that you live with what the judge rules on, so you've got to play by those rules. And so the fact that the full video was introduced by the plaintiff shouldn't be used as a gear to hang him by, because if he had stopped that video at the moment of impact and the counsel for the defendant decided to turn around and play the entire post-event that was being allowed by the court, it would appear as though the plaintiff was hiding something, and that wasn't the case. We were stuck with the video, and that's what had to be shown. In all fairness, the court allowed you, appellant objected or trial counsel objected. I'm sorry, defendant objected to some of the pre- I have it the other way around. Plaintiff objected to some of the pre-event or pre-accident events coming in.  I guess I'm getting it backwards. But I guess my point is the judge allowed pre-accident events and post-accident events to come in, allowed the whole continuum to come in despite objections, respective objections by the parties. That's true, except the case is about the deputy Rosencrantz and whether or not anything that he had done was reckless and constituted rule for one and was a cause of Karen's death. So the pre-accident video and discussion banned. Nothing about the post-accident had anything to do with Karen's death. And so there's a wildly different position that I believe the defendant would have to conceive as to the relevance of that post-contact video evidence convictions, any of that. Did the plaintiff go into the deputy not attending to the victim immediately after the accident? I don't believe that that was something that... I thought there was questioning of Deputy Rosencrantz as to his actions after the accident, not attending to him immediately. That may be true. And probably in an effort to establish a callousness towards the victim when, in fact, he was, as the counsel argued, he had to, because of his duties as a police officer, safeguard the community because there's an armed suspect exiting the vehicle. I'm not sure. Well, Justice Burke, is it accurate? Okay. I have no reason to dispute that. And then another issue that was just raised was that the plaintiff could have brought in the defendants. Well, the plaintiff could have brought in the defendants, but if the plaintiff didn't believe that their testimony was necessary or useful to his claim, he doesn't have an obligation to bring in the defendants. Moreover, if the defendants were there, they had already been defaulted, so they couldn't have testified about anything in their defense, and who knows whether or not the court would have allowed them to testify. We just don't know. That's playing a three-dimensional chess game that we don't have before the court. And so we don't know what would have happened if they had shown up. But we do know that they were defaulted, and so, again, back to the convictions, they were irrelevant. They were unnecessary. They tainted the plaintiff's beliefs. The verdict in this case denied the fair trial, created substantial prejudice, and we respectfully request this court reverse the determination of the trial court and remand it for a new trial. The evidence is clear. Counsel argued that the plaintiff agreed to Motion 11A.18, and the jury instruction that was given is not an issue on appeal at all. It should not be an issue on appeal at all. As to the jury instruction that I think he said that the plaintiff endorsed, that was after the court had made its decision, and then we all have to, after a decision by the court, we've got to then work within those confines to say, well, I guess that's another one. I'm not agreeing. I'm not leaving my objection to the appropriateness. Well, that's different because that was not what was said. That's different. If you're going to preserve your objection, you have to preserve your objection. You can't say, oh, I agree. For example, to an amended instruction, say, well, you're not going to give my instruction, but if you're going to give this instruction, that's different. Would you agree? I would agree that if your opportunity to object to an instruction has been given and then the court says, but I'm going to give this, figure out how it can be done within the confines of my decision, the plaintiff isn't going to stand there or any party is going to stand there and stomp their feet and say, I'm just not going to agree to anything. He's agreeing to what the court has required him to agree to, that this is what the jury instruction is going to be going forward. And I think in this closely balanced case, that it necessitates a remand for a new trial. And we appreciate Your Honor. Thank you. The court thanks both parties for the quality of your arguments today. The case will be taken under advisement. A written decision will be issued in due course. The court stands in recess.